**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| PREMIER INTERNATIONAL ASSOCS. | § | |
| vs. | § | CIVIL ACTION NO. 2:05-CV-506 |
| APPLE COMPUTER, INC. | § | |

**MEMORANDUM OPINION AND ORDER**

**1.    Introduction**

Premier International Associates, LLC ("Premier") asserts various claims of two United States patents in this case against Apple Computer, Inc. ("Apple"). The patents-in-suit include U.S. Patent No. 6,234,725 ("the '725 patent") and U.S. Patent No. 6,763,345 ("the '345 patent"). The '345 is a continuation of the '725 and shares a common specification. This opinion resolves the parties' various claim construction disputes. The court will briefly address the technology at issue in the case, then turn to the merits of the claim construction issues.

**2.    Background of the Technology**

In general, the patents-in-suit disclose methods and systems for creating inventories of media items and creating lists of those items for playback. Using a programmable processor, a user can build an inventory of audio or visual works. '725 patent, Abstract. The user can create lists of works, referred to as "play lists" to establish a play or presentation sequence. *Id*. The play list can be visually displayed and edited on a computer screen. *Id*. A plurality of the play lists can be stored on various media for subsequent use and playback. *Id*. Various embodiments are described, including the retrieval of media items from local sources, as well as over the Internet. *See* '725 patent, Figs. 1, 5, 6, and 7.

Using the methods and systems described in the patent, a user may create lists by, for example, selecting from items in an inventory. '725 patent, col. 1, ll. 53-55; col. 2, ll. 26-32. In addition, the patent discloses the creation of play lists using characteristics of the media items, such as beats per minute. '725 patent, col. 3, ll. 55-60. Once a list is created, a user may save the play list, edit it, or begin execution of the list. '725 patent, col, 1, ll. 62-65. Executing the play list results in the playback of the media items comprising the list. '725 patent, col. 3, ll. 19-22. Another feature described by the specification includes the storage of the play list on removable media. Bearing this background in mind, the court will address the claim construction disputes.

**3.   Discussion**

**A.   General Principles Governing Claim Construction**

"A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). Claim construction is an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, the court looks to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. Under the patent law, the specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims."

*Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's claims. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). And, although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This court's claim construction decision must be informed by the Federal Circuit's decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)(en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the *claims* of a patent define the invention to which the patentee is entitled the right to exclude." *Id.* at 1312 (emphasis added)(quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id.* The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.* as of the effective filing date of the patent application." *Id.* at 1313. This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention. The patent is addressed to and intended to be read by others skilled in the particular art. *Id.*

The primacy of claim terms notwithstanding, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id.* at 1315 (quoting *Markman*, 52 F.3d at 978). Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims. *Id.* at 1314-17. As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. The prosecution history helps to demonstrate how the inventor and the PTO understood the patent. *Phillips*, 415 F.3d at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.* Nevertheless, the prosecution history is intrinsic

evidence. That evidence is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims.

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Id*. at 1319-24. The approach suggested by *Tex. Digital*–the assignment of a limited role to the specification–was rejected as inconsistent with decisions holding the specification to be the best guide to the meaning of a disputed term. *Id.* at 1320-21. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of the claim terms within the context of the patent." *Id*. at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id*. What is described in the claims flows from the statutory requirement imposed on the patentee to describe and particularly claim what he or she has invented. *Id.* The definitions found in dictionaries, however, often flow from the editors' objective of assembling all of the possible definitions for a word. *Id.* at 1321-22.

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim

language. *Id*. at 1323-25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

### B.      Disputed Terms

#### 1.      work(s); item(s); media item(s)

The term "work(s)" appears in claims 9, 45, 46, 84, 96, and 99 of the '725 patent and claims 1, 11, 19, 20, 31, 32, 36, 38, 43, 57, 61, 63, 68, 87, and 93 of the '345 patent. The term "item(s)" appears in claims 1, 9, 27, 34, 45, 46, and 74 of the '725 patent. The term "media item(s)" appears in claims 6, 22, 30, and 112 of the '725 patent. The plaintiff proposes a construction of "audio and/or video compositions, e.g. songs, movies, music videos, advertisements." The defendant proposes "complete audio/video compositions, e.g. songs, movies, music videos, advertisements," adding only the term "complete" to the plaintiff's proposed construction. The written description is silent on whether the term "works" includes partial works. As such, the claims appear to be the best source for intrinsic guidance for a construction of these terms.

The plaintiff points to dependent claims 43 and 44 of the '725 patent and argues that the doctrine of claim differentiation supports its construction. Claim 43 depends from claim 9. Independent claim 9 includes the term "items" and dependent claim 43 states "the items presented represent the full versions." '725 patent, cl. 9, 43. Claim 44 depends from claim 22. Independent claim 22 contains the term "media items" and dependent claim 44 states "the media items represent the full versions." '725 patent, cl. 44. The plaintiff therefore argues that by further defining the terms "items" and "media items" to include "full versions" of those "items," the patentees intended to include "partial versions" of the respective compositions in each of the above terms. This

argument is appealing, because independent claims 9 and 22, by embracing both full and partial versions, would provide for broader claim scope than the dependent claims.

The defendant supports its construction with reference to claims 70, 45, and 46 of the '345 patent and argues that the doctrine of claim differentiation supports its proposed construction. Claim 70 depends from claim 57.  Independent claim 57 includes the term "works" and dependent claim 70 states "enabling a user to preview at least a part of a work."  Claim 45 depends from claim 32. Independent claim 32 includes the term "works" and dependent claim 45 states "enabling a user to preview at least a part of a work."  Claim 46 also depends from claim 32 and states "wherein at least some of the works on the list include advertisements."  The defendant therefore argues that patentees, by sub-parsing the term "work" with the phrase "at least a part of," intended that each of the above terms should include only complete compositions.

Although the issue is close, the court adopts the plaintiff's proposed construction.  The defendant's claim differentiation argument fails because the relevant dependent claims of the '345 patent add additional limitations other than the limitation of a "partial work."  These dependent claims also require, for example, that the partial works be "previewed" as well as selected from either the lists or a media inventory.  As a result, the scope of the dependent claims referred to in the '345 patent are narrower than the independent claims from which they depend.  Accordingly, the court construes the relevant terms to mean "audio and/or video compositions, e.g. songs, movies, music videos, advertisements."

### 2.     play list

This term appears in claims 1, 3, 6, 7, 9, 22, 34, 46, 74, 84, and 112 of the '725 patent and claims 1, 19, 31, 32, and 57 of the '345 patent.  The plaintiff's proposed construction is "a list of works, selected from an inventory of works, that can be stored, retrieved and sequentially played." The defendant proposes a construction of "a list of works to be played."

The court's review of the intrinsic record reveals that the plaintiff's proposed definition is derived from several non-limiting excerpts from the specification and prosecution history of the '725 patent.  Apple correctly attacks the propriety of Premier's definition by arguing that the limitations proposed by the plaintiff are separately recited in several of the claims.  For example, claim 26 of the '345 patent recites "instructions for creating and storing a plurality of different play lists." '345 patent, cl. 26.  As such, Apple argues that the plaintiff's limitations are improper.

At oral argument, the plaintiff divorced itself from its own construction, arguing that the essence of the term "play list" simply requires the court to define the term as something distinct or independent from a media inventory list, while at the same time requiring the play list to be derived from an inventory.  But the intrinsic record counsels otherwise.  Claim 74 of the '725 patent specifically refers to "building a plurality of play lists having entries selected from an inventory." '725 patent, cl. 74.  As such, the court agrees with the defendant that the plaintiff's "selected from an inventory" limitation is improper insofar as the construction of "play list" is concerned.

A review of the patents reveals that the term "play list" is uniformly used in the context of a list of works that can be presented sequentially.  *See* '725 patent, col. 1, ll. 41-43 ("A system and method of arranging media elements for later replay make it possible to create new sequential presentations of the elements."); '725 patent, col. 1, ll. 56-57 ("[t]he collection can be played back

or performed sequentially as specified on a list."). Given the repeated description of a play list as a list of works that can be played sequentially, the court construes the term "play list" to mean "a list of works that can be played sequentially."

### 3.  executing the play list; presenting the works on a . . . play list

These terms, or variations of them, are found in claims 3, 74, and 112 of the '725 patent and claims 19, 31, 57, and 93 of the '345 patent. The plaintiff's proposed construction is "sequentially playing the works in the play list." The defendant's counter-construction is "automatically playing the works on a play list." The parties agree that the term "executing the play list" means "playing the play list." The parties' dispute is whether the play list must continue playing in its entirety, *e.g.* upon pushing the play button, or whether the play list must only partially play, in some sequence.

The claim language at issue is "executing the play *list*" (emphasis added). This suggests that once playback is initiated, either at the beginning of the list or with a selected song, playback continues automatically until the user intervenes or the list is concluded. Moreover, the specification does not disclose a different meaning. The embodiment disclosed in Figure 3I incorporates a flow of operation whereby the execution of the list causes the list to continue to play through the conclusion of the list or until the user stops playback. As a result, the court concludes that Apple's proposed construction is correct and adopts it. The court defines this term to mean "automatically playing the works in the play list."

**4.     executable play list**

This term appears in claim 1 of the '345 patent. The plaintiff's proposed construction is the same as its proposed construction for the term "play list," namely "a list of works, selected from an inventory of works, that can be stored, retrieved and sequentially played." The defendant's proposed construction of "a list of works that can be played automatically" adds the term "automatically" to its proposed "play list" definition. For essentially the reasons stated with respect to the previous terms, the court defines the term "executable play list" to mean "a play list that can be played automatically."

**5.     characteristic**

The term "characteristic" appears in claim 11 of the '345 patent. The plaintiff's proposed construction is "a distinguishing feature of a work, such as, beats per minute, length, resolution, artist name, song name, play count or genre." The defendant's counter-construction is "a property that can be determined by analyzing a recording (such as beats per minute, length, or video resolution), as opposed to information about a work such as "artist name" or "song name." After reviewing the briefs and the arguments of the parties, the court construes the term "characteristic" as "a distinguishing feature of a work."

**6.     the circuitry includes instructions for selecting works to be included in the displayable list in accordance with a selected characteristic**

This term appears in claim 11 of the '345 patent. The plaintiff proposes a construction of "executable computer instructions for automatically selecting works to be included in the displayable play list corresponding to a user-selected characteristic (as defined above), without the user having to individually select each work to be included in the list." The defendant urges that no construction of this term is necessary. In the alternative, however, the defendant suggests the

10

following construction: "instructions for selecting works to be included in the displayable list based on a chosen characteristic (as defined above)."

The parties dispute 1) whether a "displayable list" as used in the above term is really a "play list," and 2) whether the phrase "instructions for selecting works" means that instructions, as opposed to a user, selects the works for inclusion in the displayable list. Claim 11 of the '345 patent, in conjunction with Figure 4H, clarifies these issues. In contrast to many of the claims of the patents-in-suit, which are drawn to play lists, claim 11 of the '345 patent is drawn instead to a "displayable list." As shown in Figure 4H, the upper list, labeled "Media Inventory," is a listing of works in the media inventory. As shown by the "Source Song Selection Parameters" window in Figure 4H, a user can select characteristics and automatically generate a "displayable list" via computer instructions. The "displayable list" is a sub-set of the media inventory. It is then displayed as the source of songs from which a user may build a play list. Claim 11 is directed toward the automatic creation, via computer instructions, of a "displayable list," as opposed to a play list. For these reasons, the court construes the above term to mean "computer instructions for automatically selecting works to be included in the displayable list based on a user-selected characteristic."

**7. executable instructions for creating at least one play list by selecting works in accordance with a predetermined criterion**

This term appears in claim 31 of the '345 patent. The plaintiff's proposed construction is "executable computer instructions for automatically creating a play list by selecting works corresponding to a user-selected characteristic (as defined above), without the user having to individually select each work to be included in the play list." The defendant contends that no construction of this term is necessary. Alternatively, the defendant proposes a construction of

11

"instructions for creating at least one play list by selecting works corresponding to a user-selected criterion, such as, for example, Artist, Genre, Beats Per Minute, and Most Played." At the *Markman* hearing, Apple argued that Premier's inclusion of "automatically creating a play list" in its construction was improper because such construction excludes a preferred embodiment from the claims, *e.g.* the creation of a play list by a user. Other claims, however, embrace the concept of a play list created with the user's intervention. *See, e.g.,* '725 patent, cl. 1. This fact, coupled with the disclosure of Figure 4H, supports Premier's construction. The court construes this term to mean "computer instructions for automatically creating at least one play list based on a user-selected criterion."

### 8.    executable instructions for building a displayable inventory of works

This term appears in claim 1 of the '345 patent. After briefing its proposed construction of this term in its opening brief, Premier, in its reply brief, asked the court to withdraw this term from consideration. At oral argument, Apple urged the court to construe this term. The court will construe this term.

Premier's originally proposed construction of this term is "executable computer instructions for creating a displayable inventory of works, without the user having to manually transfer each song or enter information about each song." Apple's counter-construction is "instructions which cause the circuitry to create an inventory of works that can be displayed." The court construes this term to mean "computer instructions for automatically creating an inventory of works that can be displayed."

### 9.     popularity

The term "popularity" appears in claim 112 of the '725 patent and claims 12, 20, 31, 38, 63, 87, and 93 of the '345 patent. The plaintiff's proposed construction is "a ranking based on the number of times a particular work has been downloaded or played back, indicating how popular the particular work is." The defendant proposes "how much an item is liked or admired by a group of people."

The intrinsic record reflects that claim 89 of the '725 patent states "the remote source includes instructions for establishing popularity information *indicative of plays of works* during predetermined time intervals." '725 patent, claim 89 (emphasis added). Claim 113 of the '725 patent states "including executable instructions for establishing popularity information *indicative of plays of works* during predetermined time intervals." '725 patent, cl. 113 (emphasis added). Additionally, the specification of the '725 patent states

> If desired, processor 12a in system 10-1 can keep track of the number of plays and total play time and transmit that information to processor 20a, for billing purposes. Reports producible by the processor 20a include *total plays and play time* along with invoices for end users. Documentation for royalty payments to the appropriate recipients can also be created. Finally, the reports can list those works by demand or popularity by day, week or month.

'725 patent at col. 7, ll. 3-10 (emphasis added).

The intrinsic record supports the plaintiff's proposed construction. The court construes this term to mean "information indicative of the number of times a particular work has been downloaded or played back, indicating how popular the particular work is."

13

### 10.     a media writing device . . . whereby . . . works . . . can be written to a removable medium; a media write unit . . . for writing items . . . to a removable medium

The term "a media writing device . . . whereby . . . works . . . can be written to a removable medium" appears in claims 43 and 68 of the '345 patent.  The plaintiff proposes a construction of "a media interface, for writing digital works to a medium removable from the interface."  The defendant's counter-construction is "a media writing device for writing works to a medium removable from the media writing device."

The term "a media write unit . . . for writing items . . . to a removable medium" appears in claim 34 of the '725 patent.  The plaintiff proposes that this term be construed the same as the above term.  The defendant proposes a construction of "a media write unit for writing works to a medium removable from the write unit."

The crux of the dispute is whether the terms "media writing device" and "media write unit" can be construed to mean an "interface" for communication with a separate device for writing a work.  A secondary issue is whether the work must be "digital."   With respect to the secondary issue, the specification states "[i]n yet another aspect, the method includes building a list of media elements which can come from a variety of sources.  *Preferably*, the media elements are storable in a digital format."  '725 patent at col. 2, ll. 15-18 (emphasis added).  Therefore, the storage is not limited to a digital format.

Similarly, there is no warrant for imposing the plaintiff's interface construction.  The plain language of the claim refers to a media writing device and a removable medium.  Regardless of the language of the claims as originally filed, the grammar of the claim language as allowed suggests that "removable" characterizes the type of medium used in the media writing device.  The

specification is consistent with this construction, identifying audio and video tapes and CDs as examples of removable media. '725 patent, col. 2, ll. 2-3. As a result, the court construes the relevant terms to mean "a media writing device for writing works to a medium removable from the media writing device."

    **11.    download(ed)**

The term "downloaded" appears in claims 96 and 112 of the '725 patent and claims 43 and 68 of the '345 patent. The term "downloading" appears in claims 45, 46, and 74 of the '725 patent and claims 32, 57, 87, and 93 of the '345 patent. The term "downloads" appears in claims 9, 22, 46, and 84 of the '725 patent. With respect to the term "downloaded," the plaintiff proposes a construction of "some collection of data transferred from a memory to another memory via a communications link." The defendant proposes "retrieved and stored in a disk or other non-volatile storage." With respect to the term "downloading," the plaintiff proposes a construction of "transferring some collection of data from a memory to another memory via a communication link." The defendant proposes "retrieving and storing in a disk or other non-volatile storage." With respect to the term "downloads," the plaintiff proposes a construction of "transfers some collection of data from a memory to another memory via a communications link." The defendant proposes "retrieves and stores in a disk or other non-volatile storage."

The dispute between the parties is whether downloading includes streaming. Although the defendant cites cases that draw a distinction between downloading and streaming in the copyright context, the terms of these patents use downloading in a manner that includes streaming. For instance, claim 49 of the '725 patent recites "wherein for at least some of the media items the processor downloads media items from the remote inventory via the communications link at

15

substantially the same time the corresponding media item is presented to the user." This language captures the essence of streaming, which is a process for transmitting information from a host site over a communications link and presenting it to the user at substantially the same rate (i.e. the same time) it is transmitted. As such, the court construes the term "downloads" to mean "retrieves and stores in volatile or non-volatile storage."

**12.    displaying a plurality of . . . play lists; displaying a plurality of . . . lists**

The term "displaying a plurality of . . . play lists" appears in claims 3 and 7 of the '725 patent. The term "displaying a plurality of . . . lists" is found in claim 74 of the '725 patent. The plaintiff proposes a construction of "concurrently displaying more than one play list" for each of the above terms. The defendant's counter-proposal is "using a display to identify a plurality of [play] lists." The parties' dispute, as set forth in the briefs, is whether the contents of the list must be displayed (the plaintiff's construction) or whether it is sufficient that only the titles of a plurality of lists be displayed (the defendant's construction). The patent discloses the display of a plurality of play list titles (and titles alone) in Figure 4J. Based on this disclosure, it appears that this term embraces the situation where only the titles of the play lists are displayed. As a result, the court construes this term to mean "the simultaneous display of at least the titles of two or more play lists."

**13.    instructions for effecting royalty payments to appropriate recipients**

This term appears in claim 84 of the '725 patent. The plaintiff proposes a construction of "computer instructions that cause royalty payments to be made to third parties entitled to royalties for the works." The defendant counters with "instructions that make royalty payments for the works." The dispute is the extent to which the instructions must automate the entire payment process. Consistent with its construction of the preceding terms relating to computer instructions,

16

the court construes this term to mean "computer instructions that automatically cause royalty payments to be made to appropriate recipients."

**4.    Conclusion**

The court adopts the above constructions. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the court.

SIGNED this 23rd day of May, 2007.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE